PEOPLE v PRINGLE

PEOPLE v TROMP

Docket Nos. 44316, 44317. Submitted November 9, 1979, at Grand
Rapids.—Decided March 5, 1980. Leave to appeal applied for.

William C. Pringle and Daniel L. Tromp, Muskegon residents,
were arrested in Oakland County by Farmington Hills police
and charged with carrying concealed weapons, receiving and
concealing stolen property over $100 and delivery of marijuana.
The officers searched the automobile in which the two men
were arrested and found marijuana, books and records detail-
ing narcotics transactions and $6,905 in cash. The Michigan
Department of Treasury determined that defendants had failed
to pay sales tax and single business tax on their narcotics
operations. The funds in possession of the police were seized by
the department to satisfy the tax assessment. Defendants filed
a motion in their circuit court criminal case to compel return
of the cash. Oakland Circuit Court, James S. Thorburn, J.,
granted the motion. The State of Michigan appeals. The ques-
tion presented is whether the circuit court judge erred when he
ordered cash returned to the defendants in the criminal felony
case upon determining that the property had been illegally
seized where the Michigan Department of Treasury had, previ-
ous to the suppression of evidence order, issued a jeopardy tax
assessment on the property. *Held:*

1. Taxpayers should have an opportunity to challenge the
treasury department's exercise of summary procedures in ob-
taining funds under the jeopardy tax assessment law. A circuit
court, either in the residence of the taxpayer or in the county
which has scrutinized seizure of funds by the treasury depart-
ment, is the proper forum for judicial review of jeopardy tax
assessments. The Oakland County Circuit Court, which held
that the funds were unconstitutionally seized, was a proper
forum and had jurisdiction to hear and decide defendants'
motion for return of the money.

2. The trial court's order directing return of the money to

REFERENCES FOR POINTS IN HEADNOTES

[1] 72 Am Jur 2d, State and Local Taxation § 787.

[2] 72 Am Jur 2d, State and Local Taxation §§ 1063, 1064.

defendants was proper. Unconstitutional searches and seizures in a criminal case should not be used to trigger a jeopardy tax assessment and seizure of money from a taxpayer by the treasury department. Recovery of taxes is a civil matter and the treasury department should operate outside of the context of a criminal case in attempting to enforce its statutory remedies for the collection of taxes.

Affirmed.

1. TAXATION — JEOPARDY TAX ASSESSMENTS — VALIDITY OF ASSESSMENT — ILLEGAL SEIZURES — COURTS — JURISDICTION.

A taxpayer who wishes to retrieve illegally seized funds that are subject to jeopardy tax assessments and are in the hands of the treasury department should have ample opportunity to challenge the treasury department's exercise of summary procedures to obtain the funds under the jeopardy assessment law; a circuit court is the proper forum for judicial review of the jeopardy tax assessment and this circuit court may be in the residence of the taxpayer or the forum which has scrutinized the treasury department's seizure of funds, if that court possesses civil jurisdiction.

2. TAXATION — JEOPARDY TAX ASSESSMENTS — CRIMINAL LAW — SEARCHES AND SEIZURES — TREASURY DEPARTMENT — COURTS — JURISDICTION.

An unconstitutional search and seizure in a criminal case should not be the triggering event and the basis upon which a jeopardy tax assessment and seizure of money from a taxpayer by the treasury department is based; recovery of taxes is a civil matter and the treasury department should operate outside of the context of a criminal case in attempting to enforce its statutory remedies for the collection of taxes allegedly due or to become due.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. David Brockman, Ramon M. Alvarez* and *Thomas L. Casey,* Assistants Attorney General, for plaintiff.

*Lustig & Friedman, P.C.,* for defendants.

Before: V. J. Brennan, P.J., and Beasley and Bowles,* JJ.

Beasley, J. Defendants, William C. Pringle and Daniel L. Tromp, residents of Muskegon, were arrested by the Farmington Hills police and charged with carrying concealed weapons, contrary to MCL 750.227; MSA 28.424, receiving and concealing stolen property over $100, contrary to MCL 750.535; MSA 28.803, and delivery of 13 pounds of marijuana, contrary to MCL 335.341(1)(c); MSA 18.1070(41)(1)(c). The officers searched the automobile in which the two men were arrested and found marijuana, books and records detailing narcotics transactions and $6,905 in cash.

The Michigan Department of Treasury then conducted an audit of the possible tax liability of defendants and concluded that defendants had failed to pay sales tax and single business tax on their narcotics operations. After issuing warrants and notice of levy, the Michigan Department of Treasury seized $6,907.14 which was in possession of the Farmington Hills Police Department to satisfy the tax assessment.

Several months later, defendants moved to suppress the evidence seized by the Farmington Hills police. The circuit judge entered an order suppressing all marijuana, but denied defendants' motion in other respects. Subsequently, defendants pled guilty to the concealed weapons charge. Then, defendants filed a motion in the circuit court criminal case to compel return of the cash. The trial court granted the motion, and the Michigan Department of Treasury brings this appeal.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The question we are asked to determine is whether the circuit court judge erred when he ordered cash returned to a defendant in a criminal felony case upon determining that the property had been illegally seized where the Michigan Department of Treasury had, previous to the suppression of evidence order, issued a jeopardy assessment on the property.

At the outset, we review some cases bearing upon the issue here involved. In doing so, we recognize that a circuit court is a court of general jurisdiction and, thus, the issue of the role Detroit Recorder's Court, whose jurisdiction does not include civil cases, plays in disputes over who has title to property that is illegally seized differs from that presented here.[1]

In *People v Rosa*,[2] defendants had brought a motion in Detroit Recorder's Court for the return of funds which the court had found were illegally seized. The trial judge declined to hear the motion, holding that Recorder's Court lacked jurisdiction. In remanding to Recorder's Court for a determination of who had a right to the property, the Supreme Court found that it was appropriate for defendants to seek the return of their property within the context of the criminal case and it was not necessary for them to file a separate civil action. However, in *Rosa,* the funds were not subject to a jeopardy tax assessment, as in the instant case.

In *People v Hernandez*,[3] the Internal Revenue Service assessed a tax deficiency against cash that was subsequently determined to have been ille-

---

[1] Previously, Detroit Recorder's Court has exercised some civil jurisdiction in condemnation cases, but see, *Detroit v Rabaut,* 389 Mich 329; 206 NW2d 625 (1973).

[2] 382 Mich 163; 169 NW2d 297 (1969).

[3] 52 Mich App 56; 216 NW2d 438 (1974).

gally seized from defendant. This Court found that a district court's order to return the cash was void because it went "beyond that court's jurisdiction". As the cash was being detained by the IRS, pursuant to a revenue act of the United States (26 USCA 6331, 6332), the property was "subject only to the orders and decrees of the courts of the United States, 28 USCA 2463, and the Secretary of the Treasury, 26 USCA 6343."[4]

*Craig v Detroit Police Dep't*[5] dealt with the proper forum for commencing an action for the return of funds illegally seized but subject to a jeopardy tax assessment. Plaintiff initiated a civil action in the circuit court of his residence to recover monies that had been seized pursuant to a search warrant. The Court found the circuit court of the residence of the taxpayer "provides a logical forum" for the hearing.[6] The Court went on to state:

"As will be discussed, *infra,* the only issues before the circuit court are whether irreparable injury exists and whether the assessment has a basis in fact."[7]

The *Craig* Court was not concerned with a jeopardy assessment in the context of suit by a party whose Fourth Amendment rights had been violated.

In *Dep't of Treasury v Recorder's Court Judge,*[8] this Court held that a defendant requesting return of monies seized illegally was raising a "separate question of title which must be addressed in a

---

[4] *Id.,* 58.

[5] 397 Mich 185; 243 NW2d 236 (1976).

[6] *Id.,* 190.

[7] *Id.,* 190-191.

[8] 89 Mich App 650; 281 NW2d 134 (1979).

court of civil jurisdiction".[9] In that case, this Court held that Recorder's Court lacked such jurisdiction, as the issues raised were not directly related to the on-going criminal proceeding.

In *Campbell v Dep't of Treasury,*[10] plaintiff instituted a civil suit in the Court of Claims for recovery of money seized by Detroit police officers pursuant to a search warrant, subsequently found illegal by Detroit Recorder's Court. The Court of Claims judge declined to return the money, holding that return of the money should await the final determination of the validity of the assessment. In response to Campbell's request for a writ of mandamus requiring the return of the illegally seized funds, this Court stated:

"We decline to order the money returned for two reasons. First, a return of the money would not eliminate the ultimate question of the validity of the jeopardy assessment since the assessment could be immediately reinstated subsequent to the return. The return would thus be a fruitless gesture that would only delay decision on the other issues.

"Second, this Court has refused to order return of funds to the taxpayer under a factually identical situation."[11]

*Sears v Dep't of Treasury,*[12] which is the case referred to in *Campbell* as having similar facts, employs similar reasoning and reaches the same result as *Campbell.*

Recognizing that alternative methods may be taken by a plaintiff who wishes to retrieve illegally seized funds that are subject to jeopardy tax as-

[9] *Id.,* 655.

[10] *Campbell v Dep't of Treasury,* 77 Mich App 435; 258 NW2d 508 (1977).

[11] *Id.,* 438.

[12] 57 Mich App 218; 226 NW2d 63 (1974).

sessments,[13] the holding in *Craig, supra,* seems to indicate that the circuit court is a proper forum if suit is commenced in the circuit court in the residence of the taxpayer. Although defendants, Muskegon residents, are not in the circuit court of their residence, the strong implication of the holding in *Craig* is that the taxpayer should have an ample opportunity to challenge the treasury department's exercise of the summary procedures of the jeopardy assessment law.[14] Furthermore, in this case, defendants Pringle and Tromp *chose* Oakland County rather than the county of their residence to seek to enforce their claim for return of the money. We see no error in permitting them to do so. We find that, consistent with the *Craig* rationale where search and seizure violations found unconstitutional under the Fourth Amendment are present, one "logical forum" for judicial review of the jeopardy tax assessment is the forum which has scrutinized the seizure, if that court possesses civil jurisdiction. The instant suit was, therefore, in a correct forum.

Consequently, we hold that, under the facts of this case, the Oakland County Circuit Court had jurisdiction to hear and decide defendants' motion for return of money that the court held was unconstitutionally seized.

The trial court held for defendants and ordered return of the money. The effect of the trial court's ruling was to set aside and hold invalid the warrant, notice of levy and seizure of money by the Department of Treasury. As indicated, we hold that *Craig* is authority supporting the assumption of jurisdiction by the Oakland County Circuit Court on request of defendants.

---

[13] Defendants could pursue a refund through the tax courts.

[14] *Campbell, supra,* 442-443.

In *Craig,* the Court also held:

"Plaintiffs have the burden of pleading and ultimately proving that a refund suit is an inadequate remedy. So also is it their burden of proving that the assessment lacked a factual basis—judged according to the information available to Treasury at the time of suit."[15]

But *Craig* was *not* a case where a purported property owner successfully invoked the search and seizure provisions of the Fourth Amendment to the United States Constitution and/or the Michigan Constitution of 1963, Article 1, § 11, and sought return of his property on the ground that its seizure from his possession was judicially determined unconstitutional. We, therefore, do not believe *Craig* is controlling precedent here and decline to find error in the finding that the assessment, levy and seizure by the Department of Treasury was invalid and should be set aside. We do not believe that where the jeopardy assessment is based and made in reliance upon and after a judicially determined unconstitutional search and seizure, the potential taxpayer has the *Craig* burden of showing that a lengthy refund suit is an inadequate remedy and that the assessment lacks a factual basis. On the contrary, we are not inclined to permit an unconstitutional search and seizure to be the triggering event and the basis upon which a jeopardy tax assessment and seizure of money is based. It may be argued that to so hold is contrary to *Campbell* and *Sears, supra.*

In *Campbell,* it is interesting that this Court said:

"The Michigan Supreme Court in *Craig v Detroit*

---

[15] *Craig, supra,* 195.

*Police Department,* 397 Mich 185; 243 NW2d 236 (1976), while reversing the Court of Appeals' decision, broadened the third remedy mentioned in the earlier *Craig* decision by allowing for immediate circuit court challenge to a jeopardy assessment, without a requirement of exhaustion of administrative remedies. The strong implication of the Supreme Court's opinion in *Craig, supra,* is that a taxpayer should have ample opportunity to challenge the department's exercise of the summary procedures of the jeopardy assessment law."[16]

Another reason that *Campbell* does not control here is that the order for return of the money was made by a Detroit Recorder's Court judge which court, as indicated, lacks civil jurisdiction. Thus, while Detroit Recorder's Court has jurisdiction over disposition of property seized within the context of a criminal case, Detroit Recorder's Court lacks the civil jurisdiction necessary to adjudicate the validity of a jeopardy assessment or levy by a taxing authority.

*Sears, supra,* was decided prior to *Craig, supra,* and for that reason is of limited assistance here. We conclude that *Campbell* and *Sears* may be distinguished from the within case and do not control decision here.

We recognize the fact that our disposition here leaves open the question of whether there is adequate basis for a future levy and seizure. Nothing we do here prevents the Department of Treasury from further steps outside of the context of this criminal case to attempt to enforce its statutory remedies for collection of the tax allegedly due or to become due. We are also aware that the effects of the delay in perfecting and obtaining disposition of this appeal leaves this case in an uncertain posture. But we can only decide what we have

---

[16] *Campbell, supra,* 442-443.

before us. In view of our disposition of this case that is before us, it would be unwise to attempt to speculate about whether, on some future date, there was a sufficient factual basis for application of the summary collection remedies available to the Department of Treasury.

However, as indicated, we affirm the trial court's order directing return of the money to defendants.

Affirmed, with costs.